IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FT&T CONSULTING INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 1141 |
| | ) |
| CARGOWISE EDI INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to compel arbitration and to stay proceedings. For the reasons stated below, we deny the motion to compel arbitration and to stay proceedings.

**BACKGROUND**

Plaintiff FT&T Consulting Inc. (FT&T) alleges that it is a freight forwarding service company that arranges for transportation and related services for the movement of commercial goods, wares and merchandise on behalf of shippers. Defendant Cargowise (Cargowise) is allegedly a manufacturer and supplier of computer software products. FT&T contends that Defendant Gene Gander is a Vice President of Sales of Cargowise and Defendant Linda Lewin is an employee of

Cargowise. On October 15, 2007, FT&T allegedly entered into a Product and Services Agreement with Cargowise. Under the agreement, Cargowise licensed FT&T to use Cargowise's edi*Enterprise* system that Cargowise allegedly represented was a software program capable of integrating all of the modules contained in the program so as to streamline FT&T's various cargo-handling and transportation services in one integrated system. On October 18, 2007, the parties entered into a Maintenance and License Agreement (MLA), which included warranties and disclaimers. One warranty guaranteed that the edi*Enterprise* system would integrate the FT&T supply chain system. FT&T alleges that the edi*Enterprise* system failed to work as promised. FT&T alleges that in order to implement the edi*Enterprise* system, it had to reconfigure its software and hardware systems and incurred costs in software and maintenance charges and charges for an installation technician. Cargowise allegedly promised to provide an integration system to fix the problem but never did so. FT&T contends that Cargowise failed to honor its obligations under the MLA. FT&T includes in its amended complaint: (1) a breach of contract claim brought against Cargowise, (2) a fraud in the inducement claim brought against all Defendants, and (3) a rescission claim.

## DISCUSSION

Defendants argue that FT&T agreed to arbitrate any disputes regarding the MLA and thus the instant action should be stayed while the parties proceed in arbitration. A court "will compel arbitration 'unless it may be said with positive

2

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," that "[w]here the arbitration clause is broad, there is a presumption in favor of arbitrability," and that "[a]ny ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration." *United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Service Workers Intern. Union v. TriMas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008)(internal quotations omitted)(citing *AT & T Techs., Inc. v. Communc'ns Workers of America*, 475 U.S. 643, 649 (1986) and *United Steelworkers of America v. Warrior & Gulf,* 363 U.S. 574, 582 (1960)); *see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern., Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)(stating that the court should "[b]ear[] in mind the Supreme Court's instruction that 'any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration'")(quoting in part *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1985)); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998)(stating that "once it is clear the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration").

I.  Whether MLA is governed by the FAA or IUAA

Defendants argue that the MLA is governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, which provides the following: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or

3

transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing *to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2 (emphasis added); *see also Wojcik v. Aetna Life Ins. and Annuity Co.*, 901 F. Supp. 1282, 1286 (N.D. Ill. 1995)(stating that "[i]n order to determine whether a claim is arbitrable, the Court must determine: (1) whether there is an agreement to arbitrate; (2) whether the claims fall within the scope of that agreement; and (3) whether there has been a waiver of the right to arbitrate").

FT&T disagrees that the MLA is governed by the FAA and contends that it instead is governed by the Illinois Uniform Arbitration Act (IUAA), 710 ILCS 5/1 *et seq.* FT&T points to Section 21.8 of the MLA, which provides that the MLA will be governed and construed by the laws of the state of Illinois. (MLA 21.8). However, even if the IUAA applied to the instant dispute, the MLA favors resolution by arbitration as well. *See J & K Cement Const., Inc. v. Montalbano Builders, Inc.*, 456 N.E.2d 889 (Ill. App. Ct. 1983)(indicating that an objective of the IUAA was to encourage arbitration, that "[g]iven the common origins of the federal and uniform statutes, courts interpreting state arbitration statutes patterned after the Uniform Arbitration Act look for guidance to federal court decisions interpreting similar provision of the Federal Arbitration Act" and that "[b]ecause of the common origin of the federal and uniform acts, and the fact that the Illinois Uniform Arbitration Act is patterned after the Uniform Arbitration Act, [a court should] proceed to interpret

[the IUAA] with the aid of decisions from other states and federal courts"); *Vazquez v. Central States Joint Bd.*, 547 F. Supp. 2d 833, 865 (N.D. Ill. 2008)(stating in a case with general choice of law provision for Illinois law that "a general choice of law provision in a contract will not extend to the arbitration clause, absent specific evidence the parties intended it to do so" and that "[t]his is immaterial to the outcome, in any event, because [t]he language of the FAA and the Illinois Uniform Arbitration Act is essentially the same")(internal quotations omitted). Defendants have cited case law explaining that general choice of law provisions do not apply to arbitration clauses. *See, e.g., Paul Davis Systems of Northern Illinois Inc., an Illinois Corp. v. Paul W. Davis Systems, Inc., a Florida Corp.*, 1998 WL 749041, at *1 (N.D. Ill. 1998)(finding that FAA applied despite choice of law provision in contract); *see also BEM I, L.L.C. v. Anthropologie, Inc.*, 2000 WL 1849574, at *6 (N.D. Ill. 2000)(stating that *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) "has been read to mean that 'a general choice of law provision in a contract will not extend to the arbitration clause, absent specific evidence the parties intended it to do so'")(quoting in part *State Farm Mutual Automobile Ins. Co. v. George Hyman Constr. Co.*, 715 N.E.2d 749 (4th Dist. 1999)).

FT&T in turn has pointed to case law in which the choice of law provisions in an agreement were held to govern the arbitration clause. *See, e.g., Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 876 N.E.2d 203, 212-13 (Ill. App. Ct. 2007)(stating that "[i]n circumstances where parties to a contract have agreed to arbitrate in accordance with state law, the FAA does not apply, even where interstate

commerce is involved" and indicating that thus the "FAA presumption" in favor of arbitration would not apply). In the instant action, whether the FAA or the IUAA applies to Section 20.3 of the MLA is not dispositve since, as is explained in detail below, a reasonable interpretation of the MLA under either the FAA or the IUAA does not justify staying the instant action for arbitration.

II. Scope of Arbitration Clause in MLA

Defendants argue that the arbitration clause in the MLA is broad and covers all disputes relating to the MLA. Defendants point to Section 20.3 of the MLA, governing Dispute Notices, which provides that "[i]f the parties do not resolve the dispute within 10 Work Days of the delivery of a Dispute Notice either party may refer the dispute to Arbitration. . . ." (MLA 20.3). A court should "interpret arbitration clauses according to their plain meaning and, in construing language, [a court should] strive for a commonsense result." *United Steel*, 531 F.3d at 536 (stating also that "[g]eneral principles of contract interpretation [apply to such an] analysis but only to the extent that they comport with the federal policy in favor of arbitration")(citing *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568 (1960) and *United Steelworkers of America v. Warrior & Gulf*, 363 U.S. 574, 578 (1960)).

Defendants argue that "with all dispute resolution provisions in the [MLA], the arbitration clause is broad, envisioning the resolution of all disputes arising out of the parties' relationship through arbitration." (Reply 5). FT&T disagrees with

6

Defendants' position that the arbitration clause in the MLA broadly covers all disputes relating to the MLA. FT&T points out that the arbitration clause in Section 20.3 is located in Section 20 of the MLA which addresses under one heading "Dispute Notices, Resolution and Arbitration." (MLA 20). Section 20.1 provides that "[d]isputes related to performance of obligations under this Agreement are not subject to this clause and shall be managed according to clause 19.1 through 19.6" and that "[a]ll other disputes must be reported in writing by the disputing party using a Dispute Notice." (MLA 20.1).

FT&T argues that the dispute in the instant action focuses on the alleged non-performance by Defendants of their obligations under the MLA. FT&T contends that Defendants did not provide the appropriate software or follow their obligations under the warranty provisions in the MLA. Defendants themselves also acknowledge that FT&T's "claims are based entirely upon the failure of Defendants to perform the most fundamental term of the MLA, to provide a software program with the capabilities it represented the software had, including the ability to integrate the software's various modules." (Mem. 3). Thus, performance obligations disputes, which is the issue in this case, as indicated above, are specifically excluded from arbitration in Section 20.

Defendants argue that the provision in Section 20.1, excluding disputes relating to performance obligations, was merely intended to mean that, when performance obligations were at issue, the parties needed to first follow the dispute resolution procedures in Section 19 of the MLA before turning to Section 20.

7

However, Defendants' interpretation of the MLA fails to account for the language in Section 20.1 specifically excluding performance disputes. There is not language in Section 20.1 indicating that such issues are excluded, but only until the parties do something else first. It is true that Section 19.7 of the MLA provides that after following disputes concerning "Disputed Non Performance Reports," the "parties shall then follow the process in clause 20.2 and 20.3." (MLA 19.7). However, as explained above, the exclusion of "performance related disputes" in Section 20, contrasted with "Disputed Non Performance Reports" in Section 19.7 specifically referred the parties only to "clause 19.1 through 19.6," thus specifically omitting Section 19.7.

The only reasonable interpretation of the MLA is that disputes relating to performance of obligations under the MLA are excluded from Section 20 of the MLA and the arbitration clause in Section 20.3. The dispute resolution process in Section 20 is limited solely to disputes as to "Dispute Notices," that are referenced in Sections 19.1 through 19.7. FT&T correctly points out that Section 19.6 provides that if the parties fail to resolve a dispute using the procedures in Section 19.1 through 19.6, "the parties may move to permitted termination and other commercial or legal remedies." (MLA 19.6). FT&T is bringing the instant action to obtain legal remedies.

We cannot reasonably interpret the scope of the arbitration clause in the MLA as broadly as Defendants propose in light of the terms in the MLA. The United States Supreme Court has made clear that "'arbitration is a matter of contract and a

8

party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986)(quoting *Warrior & Gulf*, 363 U.S. at 582); *Sweet Dreams Unlimited, Inc.*, 1 F.3d at 641 (stating that "[i]t is beyond peradventure that the Federal Arbitration Act embodies a strong federal policy in favor of arbitration . . . [b]ut the duty to arbitrate remains one assumed by contract, and we will not compel parties to arbitrate disputes unless they have agreed to do so").

In *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern., Ltd.*, 1 F.3d 639 (7th Cir. 1993), which Defendants themselves cite in support of their arguments, (Mem. 5), the Seventh Circuit recognized "that contracting parties control their own fate when it comes to deciding which disputes to consign to arbitration." *Id.* at 643. The Court noted that "[o]n the one hand, [the parties] may delineate precisely those claims that are subject to arbitration or, on the other, [the parties] may employ general-even vague-language in their arbitration provisions." *Id.* The Court also noted that "[t]hey may also combine these techniques by using general language to authorize arbitration together with specific language to identify the types of disputes that are *not* subject to arbitration . . . .'" *Id.* (emphasis in original). Thus, the Seventh Circuit has specifically recognized parties' right to agree to contractually limit the scope of arbitration clauses. That is what the parties did in this case with the MLA. The instant action concerning the resolution of disputes relating to the performance of obligations under the MLA does not fall within the scope of the arbitration clause in Section 20.3 of the MLA.

9

Defendants also argue that even if the breach of contract claims are not arbitrable the fraud in the inducement claims are arbitrable. Defendants quote *Sweet Dreams Unlimited, Inc.*, for the proposition that "a court may consider a claim that a contracting party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud." *Id.* at 642. The Court in *Sweet Dreams Unlimited, Inc.* relied upon holding in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) regarding fraud in the inducement. *Id.* However, unlike in *Sweet Dreams Unlimited, Inc.*, which involved a broad arbitration clause indicating that it governed all disputes "arising out of" the agreement in question, *Id.*, in the instant action, the parties specifically limited the scope of the arbitration clause in Section 20.3 of the MLA to matters involving "Dispute Notices." (MLA 20.3). Thus, the fraud in the inducement claim in this case is not arbitrable. Therefore, we deny Defendants' motion to compel arbitration and to stay the instant action.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion to compel arbitration and to stay the instant action.

                                                                         _____
                                                                         Samuel Der-Yeghiayan
                                                                         United States District Court Judge

Dated: June 30, 2009